## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 13-85** |
| **MELVIN JAMES** | **SECTION: "G"(3)** |

## <u>ORDER AND REASONS</u>

Before the Court is Defendant Melvin James's ("James") third motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] In the motion, James contends that his medical conditions—combined with the elevated risk of contracting COVID-19 while in custody—constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[2] The government opposes the motion for compassionate release.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion. The Court orders additional terms of supervised release as set forth below to ensure public safety, adequately address James's substance abuse issues, and assist James in vocational readiness.

## <u>I. Background</u>

On November 14, 2012, state law enforcement officials arrested James while he attempted

---

[1] Rec. Doc. 104.

[2] *Id*.

[3] Rec. Doc. 106.

to distribute heroin to a confidential source in Slidell, Louisiana.[4] Following James's arrest, he informed multiple law enforcement officials that he possessed additional narcotics at his residence in New Orleans, Louisiana.[5] Based on that information, law enforcement officials executed a search warrant at James's residence.[6] They found heroin, a cutting device for heroin, cocaine hydrochloride, marijuana, cutting agents, digital scales, and "baggies."[7] They also found four firearms at James's residence.[8]

James was subsequently convicted in the 22nd Judicial District Court for the Parish of St. Tammany with possession of heroin with intent to distribute.[9] The state court sentenced James to 20 years imprisonment without the possibility of parole.[10] However, Louisiana Department of Public Safety and Corrections records reveal that James served time on his state sentence before being transferred to federal custody and James is currently considered to be on parole for the state sentence until November 15, 2032.[11]

In April of 2013, a federal grand jury in the Eastern District of Louisiana returned an indictment in connection with the conduct mentioned above in Slidell, Louisiana.[12] The indictment charged James with the following counts: possession with intent to distribute heroin

---

[4] Presentence Investigation Report ("PSR") at ¶¶ 11–12.

[5] *Id.* at ¶ 13.

[6] *Id.* at ¶¶ 13–15.

[7] *Id.*

[8] *Id.* at ¶ 14.

[9] *Id.* at ¶ 40.

[10] *Id.*

[11] Rec. Doc. 107-1.

[12] Rec. Doc. 1.

("Count One"), felon in possession of a firearm ("Count Two"), and possession of a firearm in furtherance of a drug trafficking offense ("Count Three").[13] In February of 2014, James pleaded guilty to Counts One and Two of the Indictment.[14]

In November of 2014, Judge Kurt D. Engelhardt sentenced James to a term of 198 months imprisonment as to Count One and 120 months imprisonment as to Count Two—with the two terms to be served concurrently.[15] Judge Engelhardt ordered that all but 36 months of the 198-month sentence run concurrently with James's 20-year state sentence.[16] On May 25, 2017, Judge Engelhardt reduced James's sentence to 150 months as to Count One and 120 months as to Count Two—with the two terms to be served concurrently.[17] Judge Engelhardt ordered that all but 30 months of the 150-month federal sentence run concurrently with James's 20-year state sentence.[18]

James is currently incarcerated at FCI Oakdale I, in Oakdale, Louisiana.[19] James's projected release date from the Bureau of Prisons ("BOP") is June 29, 2025.[20]

Thereafter, the above-captioned matter was transferred to Chief Judge Nannette Jolivette Brown.[21] On April 9, 2020, James filed his first motion for compassionate release pursuant to

---

[13] *Id.*

[14] Rec. Doc. 37.

[15] Rec. Doc. 61.

[16] *Id.*

[17] Rec. Doc. 88.

[18] *Id.*

[19] *See* https://www.bop.gov/inmateloc/.

[20] *Id*.

[21] Rec. Doc. 91.

Section 3582(c)(1)(A).[22] On April 16, 2020, this Court denied James's first motion for compassionate release without prejudice because the Court found that James had failed to exhaust Section 3582(c)(1)(A)'s administrative requirements.[23]

On July 14, 2020, James filed his second motion for compassionate release pursuant to Section 3582(c)(1)(A).[24] On August 12, 2020, this Court denied James's second motion for compassionate release without prejudice because the Court found that James had failed to exhaust Section 3582(c)(1)(A)'s administrative requirements.[25]

On November 1, 2020, James filed the instant third motion for compassionate release pursuant to Section 3582(c)(1)(A).[26] On November 9, 2020, the government filed an opposition to the instant motion.[27] The Court granted James an opportunity to file a reply brief in further support of the motion by on or before November 19, 2020.[28] However, no reply brief has been filed. On December 15, 2020, the government, with leave of Court, filed a supplemental memorandum to clarify a portion of the record.[29]

## II. Parties' Arguments

A.   *James's Arguments in Support of the Motion*

James makes two principal arguments in support of his motion for compassionate

---

[22] Rec. Doc. 90.

[23] Rec. Doc. 95.

[24] Rec. Doc. 96.

[25] Rec. Doc. 101.

[26] Rec. Doc. 104.

[27] Rec. Doc. 106.

[28] Rec. Doc. 105. James is represented by retained counsel.

[29] Rec. Doc. 111.

release.[30] James first argues that he has exhausted Section 3582(c)(1)(A)'s administrative requirements by submitting a written request for compassionate release to Warden Ma'at on September 22, 2020.[31] Because 30 days lapsed between Defendant's formal request and any BOP official's response, he concludes that Section 3582(c)(1)(A)'s administrative requirements are satisfied.[32]

Second, Defendant argues that his medical conditions of diabetes, hypertension, high cholesterol, and obesity—combined with the elevated risk of contracting COVID-19 while in custody—constitute "extraordinary and compelling reasons" for a sentence reduction.[33] He argues that the sentencing factors set forth in 18 U.S.C. § 3553(a), which are considered if applicable, likewise support a sentence reduction.[34] Relying on the Section 3553(a) factors, Defendant points to the following facts to support his sentence reduction request: (1) his age and pre-existing health conditions increase his vulnerability to COVID-19; (2) he is a non-violent offender and poses a low risk of recidivism; (3) he has been confined in the BOP for the past seven years without any disciplinary incidents; and (4) he has a re-entry plan with a supportive family to prevent recidivism.[35]

B.   **The Government's Arguments in Opposition to the Motion**

The government makes two principal arguments in opposition to the instant motion.[36]

---

[30] *See generally* Rec. Doc. 104-4.

[31] *Id.* at 5.

[32] *Id.* at 6.

[33] *Id.* at 6.

[34] *Id.*

[35] *Id.* at 8–9.

[36] Rec. Doc. 106.

First, the government concedes that James has exhausted his administrative remedies, but the government argues that Defendant fails to acknowledge the BOP's response to the COVID-19 pandemic.[37] According to the Government, "James' medical records show that he has been noncompliant with the diabetes treatment he is receiving at BOP, which presumably increases his risk through no fault of the government or the BOP."[38] Additionally, the Government notes that James has been tested for COVID-19 multiple times, and he received negative test results in May, June, and July of 2020.[39]

Second, the government concedes that James's medical conditions—combined with the risks of contracting COVID-19—constitute "extraordinary and compelling reasons" under Section 3582(c)(1)(A).[40] However, the government notes that a sentence reduction must still be denied if (1) the defendant is "a danger to the safety of any other person or to the community" or (2) the sentencing factors set forth in Section 3553(a) do not warrant a sentence reduction.[41] The government claims that James is a danger to the community because he is a career offender and an armed career criminal.[42] The government points out that James has a "lengthy history of drug trafficking conviction followed by a short release[,] followed by another drug trafficking conviction."[43] The government also claims that the Section 3553(a) factors disfavor a sentence

---

[37] *Id.* at 4.

[38] *Id.*

[39] *Id.* at 4–5.

[40] *Id.* at 12.

[41] *Id.* at 13.

[42] *Id.*

[43] *Id.* at 14.

reduction.[44]

### C.     The Government's Arguments Made in the Supplemental Memorandum

The government filed a supplemental memorandum to clarify a portion of the record.[45] The government represents that it relied on information in the Presentence Investigation Report to argue that James is currently serving a state sentence without benefit of parole.[46] The government represents that this information is no longer accurate because Louisiana Department of Public Safety and Corrections records reveal that James served time on his state sentence before being transferred to federal custody and James is currently considered to be on parole for the state sentence until November 15, 2032.[47]

### III. Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed."[48] Federal law provides three exceptions:

(1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A);[49]

(2) "to the extent expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"[50]; or

(3) when the defendant was sentenced based on a retroactively lowered sentencing range.[51]

---

[44] *Id.*

[45] Rec. Doc. 111.

[46] *Id*. at 1.

[47] *Id*. at 2; Rec. Doc. 111-1.

[48] 18 U.S.C. § 3582(c)(1)(A).

[49] *Id.*

[50] *Id.* § 3582(c)(1)(B).

[51] *Id.* § 3582(c)(2).

James moves the Court to reduce his sentence under Section 3582(c)(1)(A).[52] Motions to reduce a sentence under Section 3582(c)(1)(A) are often referred to as "compassionate release" motions.[53] Prior to 2018, only the Director of the BOP could file a compassionate release motion under Section 3582(c)(1)(A).[54] In 2018, Congress passed, and the President signed into law, the First Step Act.[55] That Act amended the process to file compassionate release motions by permitting prisoners to file such motions directly with a court.[56]

Yet, before filing a compassionate release motion directly with a court, a prisoner must exhaust the administrative requirements under Section 3582(c)(1)(A).[57] Indeed, under 3582(c)(1)(A), a defendant may personally move the Court to reduce his or her sentence after either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of [a request to the Bureau of Prisons to bring a motion on the defendant's behalf] by the warden of the defendant's facility," whichever is earlier.

Once Section 3582(c)(1)(A)'s exhaustion requirement is satisfied, a court may reduce a prisoner's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."[58] Finally, the Court must "also consider[ ] the factors set forth in 18

---

[52] Rec. Doc. 104.

[53] *See, e.g., United States v. Reeves*, No. CR 18-00294, 2020 WL 1816496, at *1 (W.D. La. Apr. 9, 2020).

[54] *Id.*

[55] *See id.*

[56] *See id.*

[57] *See* 18 U.S.C. § 3582(c)(1)(A).

[58] *Id.*

U.S.C. § 3553(a) to the extent that they are applicable."[59]

## IV. Analysis

In the instant motion, James argues that his medical conditions—combined with his elevated risk of contracting COVID-19 while incarcerated—constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[60] In response, the government concedes that James has exhausted his administrative remedies and, therefore, the Court may address the motion for compassionate release on the merits.[61] Additionally, the government concedes that James has demonstrated "extraordinary and compelling reasons" that would warrant a sentence reduction under Section 3582(c)(1)(A).[62] However, the government argues that compassionate release is not warranted because James poses a danger to the community and because the Section 3553(a) factors weigh against release.[63] The Court addresses each of these issues in turn.

### A.    Whether James has Exhausted Administrative Remedies

A defendant must exhaust administrative remedies before filing a motion in the district court seeking compassionate release pursuant to Section 3582(c)(1)(A).[64] If a defendant submits a request for compassionate release to the warden of his facility, and thereafter there is a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,"[65] the

---

[59] *Id.*

[60] Rec. Doc. 104.

[61] Rec. Doc. 106 at 4.

[62] *Id*. at 12.

[63] *Id.*

[64] *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020) ("The statute's requirement that a defendant file a request with the BOP before filing a motion in federal court is a [mandatory] nonjurisdictional claim-processing rule."); 28 U.S.C. § 3582(c)(1)(A).

[65] *Franco*, 973 F.3d at 468.

exhaustion requirement is satisfied, and the Court may consider a motion for compassionate release filed by the defendant.

In this case, James filed a request for compassionate release with the warden on September 22, 2020.[66] The government does not dispute that the exhaustion requirements of Section 3582(c)(1)(A) are satisfied.[67] Therefore, the Court may evaluate James's request for compassionate release on the merits.[68]

**B.      *Whether Extraordinary and Compelling Reasons Warrant a Sentence Reduction***

Pursuant to 28 U.S.C. § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the United States Sentencing Guidelines is the applicable policy statement. Application Note 1 to Section 1B1.13 defines the term "extraordinary and compelling reasons" to include the following situations: (1) the defendant is suffering from a terminal illness ("Subsection A1"); (2) the defendant is suffering from a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" ("Subsection A2"); (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less ("Subsection B"); (4) the death or incapacitation of the caregiver

---

[66] Rec. Doc. 104-1.

[67] Rec. Doc. 106 at 4.

[68] *See Franco*, 973 F.3d at 468 (recognizing that a district court must enforce the mandatory claim-processing rule where it is raised by the government). Here, the government does not raise the claim-processing rule.

of the defendant's minor child or minor children ("Subsection C1"); (5) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner ("Subsection C2"); or (6) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described" in the proceeding subsections ("Subsection D").[69]

In the instant case, James is not suffering from a terminal illness, and he is not yet 65 years old. Additionally, James does not argue that any family circumstances might warrant a reduction of his sentence under Subsection C. Accordingly, Subsections A, B, and C of the Application Note do not apply. Instead, James argues that his case falls within Subsection D.

Subsection D requires a finding of extraordinary and compelling reasons to justify a reduction of sentence. The Sentencing Guidelines were last amended on November 1, 2018, and therefore the policy statement has not been updated since the enactment of the First Step Act on December 21, 2018.[70] Before the enactment of the First Step Act, only the Bureau of Prisons could move for compassionate release under Section 3582. The First Step Act amended Section 3582(c) to allow a defendant to bring a motion for compassionate release "if he has exhausted his administrative rights to appeal the BOP's failure to bring such a motion or has waited 30 days after the warden's receipt of the request, whichever is earlier."[71]

In light of the First Step Act, there has been disagreement over whether courts may determine what constitutes an extraordinary and compelling reason under the catchall provision

---

[69] U.S.S.G. § 1B1.13 cmt. n.1  (2018).

[70] *See United States v. Gomez*, 960 F.3d 173, 176 (5th Cir. 2020).

[71] *United States v. Bell*, No. 20-10427, 2020 WL 5823316, at *1 (5th Cir. Sept. 30, 2020).

in Subsection D.[72] Recent Fifth Circuit caselaw instructs that reference to the Guidelines is one step in the district court's own determination of whether extraordinary and compelling reasons warrant a reduction of sentence.[73] The Guidelines are not "the dispositive boundary of what may be judicially determined to be extraordinary and compelling reasons for a sentence reduction for medical reasons."[74] Accordingly, "the decision of whether to ultimately grant a modification is left to the sound discretion of the trial court," and such decisions are reviewed on appeal for abuse of discretion.[75]

James argues that extraordinary and compelling reasons exist for his compassionate release because of the risks a COVID-19 infection might pose to his health.[76] James provides medical documentation showing that he suffers from diabetes, hypertension, high cholesterol, and obesity.[77] The government concedes that James suffers from these conditions and that James's diabetes places him at heightened risk of severe illness from COVID-19.[78] In addition, the CDC has stated that people with type 2 diabetes are at an increased risk of severe illness from COVID-19.[79] Therefore, the Court finds that James's medical conditions, in particular his type 2 diabetes, make him particularly vulnerable to severe illness from COVID-19 so as to warrant a finding of

---

[72] *United States v. Lawrence*, No. CR 13-42, 2020 WL 5411778, at *3–4 (E.D. La. Sept. 9, 2020) (collecting cases).

[73] *United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020).

[74] *Id*.

[75] *Id*. (quoting *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011)).

[76] Rec. Doc. 104-4.

[77] Rec. Doc. 104-2.

[78] Rec. Doc. 106 at 12.

[79] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 7, 2020).

"extraordinary and compelling" circumstances.

**C.**     ***Whether the Section 3553(a) Factors Weigh in Favor of Reducing James's Sentence***

Having found that "extraordinary and compelling" circumstances warrant a reduction in sentence, the Sentencing Guidelines' policy statement regarding compassionate release states that a defendant's sentence may be reduced only if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and the Court's determination is in line with "the factors set forth in 18 U.S.C. § 3553(a)."[80]

James argues that his release is supported by the Section 3553(a) factors, and he does not pose a danger to any person or to society if released.[81] In response, the government argues that compassionate release is not warranted because James poses a danger to the community and because the Section 3553(a) factors weigh against release.[82]

Section 3142(g) sets out the factors courts must consider in deciding whether to release a defendant pending trial. The factors related to whether a petitioner is a danger to the community include: "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[83] Section 3553(a), which sets forth the factors to consider in initially imposing a

---

[80] U.S.S.G. § 1B1.13 cmt. n.1  (2018).

[81] Rec. Doc. 104-4 at 8–9.

[82] Rec. Doc. 106 at 12.

[83] 18 U.S.C. § 3142(g).

sentence, requires the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.][84]

In February of 2014, James pleaded guilty to Counts One and Two of the Indictment.[85] James admitted to possessing heroin with the intent to distribute and to possession of a firearm in furtherance of the drug trafficking offense. These offenses arise out of a law enforcement investigation conducted in St. Tammany Parish. On November 14, 2012, state law enforcement officials arrested James while he attempted to distribute heroin to a confidential source in Slidell, Louisiana.[86] Following James's arrest, he informed multiple law enforcement officials that he possessed additional narcotics at his residence in New Orleans, Louisiana.[87] Based on that information, law enforcement officials executed a search warrant at James's residence.[88] They found heroin, a cutting device for heroin, cocaine hydrochloride, marijuana, cutting agents, digital scales, and "baggies."[89] They also found four firearms at James's residence.[90]

James was subsequently convicted in the 22nd Judicial District Court for the Parish of St.

---

[84] 18 U.S.C. § 3553(a).

[85] Rec. Doc. 37.

[86] PSR at ¶¶ 11–12.

[87] *Id.* at ¶ 13.

[88] *Id.* at ¶¶ 13–15.

[89] *Id.*

[90] *Id.* at ¶ 14.

Tammany with possession of heroin with intent to distribute.[91] The state court sentenced James to 20 years imprisonment without the possibility of parole.[92] However, Louisiana Department of Public Safety and Corrections records reveal that James served time on his state sentence before being transferred to federal custody and is currently considered to be on parole for the state sentence until November 15, 2032.[93]

James is a 53-year-old, African American male.[94] He has a lengthy criminal history for drug trafficking offenses.[95] At the time of sentencing, James was categorized as a career offender and an armed career criminal.[96] James has five adult children.[97] Another of James's sons was murdered at age 21.[98] James does not have a documented history of mental health or emotional problems.[99] He began consuming alcohol and consuming illegal drugs (marijuana and cocaine) at a young age.[100] He also reported that he began using heroin at age 26, while he was incarcerated by the Bureau of Prisons.[101] James stated that he was addicted to alcohol, marijuana, cocaine, and

---

[91] *Id.* at ¶ 40.

[92] *Id.*

[93] Rec. Doc. 111-1.

[94] PSR at p. 3.

[95] *Id.* at ¶¶ 37–40.

[96] *Id.* at ¶ 41.

[97] *Id.* at ¶¶ 50–52.

[98] *Id.* at ¶ 50.

[99] *Id.* at ¶ 58.

[100] *Id.* at ¶¶ 60–62.

[101] *Id.* at ¶ 63.

heroin.[102] On January 18, 2008, James completed a 500-hour drug treatment program while incarcerated with the Bureau of Prisons for a prior conviction.[103] Prior to James's arrest for the instant offense, he was employed performing cleaning and maintenance services for businesses in New Orleans.[104] He was also the co-owner of a bar in New Orleans.[105] James did not finish high school, but he received his General Equivalency Diploma during a prior period of incarceration.[106]

James has been incarcerated since his arrest on November 14, 2012. There have been no documented infractions reported during this period.

James's strong community ties are also appropriate considerations under Section 3142(g). Upon release, James will live with his mother in Mount Hermon, Louisiana.[107] He has a plan for employment at his family's dairy farm.[108]

Taking all of these factors into consideration, the Court finds that with appropriate support James is not a danger to the safety of any other person or to the community, and a sentence reduction is warranted under Section 3553(a). James was classified as a career offender and an armed career offender at sentencing. However, all of his prior convictions were for drug trafficking offenses, which were not violent in nature. Although the instant offense involved the possession a firearm, it was not violent in nature. Accordingly, having considered all of the

---

[102] *Id*. at ¶¶ 60–63.

[103] *Id*. at ¶ 64.

[104] *Id*. at ¶ 72.

[105] *Id*. at ¶ 71.

[106] *Id*. at ¶ 67.

[107] Rec. Doc. 104 at 4.

[108] *Id*.

relevant factors under Section 3142(g) and Section 3553(a), and having weighed the totality of the relevant circumstances, the Court finds the factors weigh in favor of James's request for compassionate release. The Court orders additional terms of supervised release as set forth below to ensure public safety, adequately address James's substance abuse issues, and assist James in vocational readiness.

## V. Conclusion

For the reasons discussed above and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court finds that extraordinary and compelling reasons warrant a reduction of James's sentence. James does not pose a danger to any other person or the community, the Section 3553(a) factors support a reduction, and the reduction is consistent with applicable U.S. Sentencing Commission policy statements. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Melvin James's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **GRANTED.**[109] James's sentence is reduced to time served in prison.

**IT IS FURTHER ORDERED** that upon release from imprisonment, James shall be placed on supervised release for a term of three years as to Counts One and Two to be served concurrently. While on supervised release, James shall abide by all standard and special conditions of supervised release, which were previously imposed at sentencing:[110]

1. James shall pay the special assessment as imposed by the judgment.

2. To ensure that James supports himself through lawful means, James shall maintain full-time, legitimate employment and not be unemployed for a term of more than 30 days unless excused for school, training, or other acceptable reasons. Further, James shall provide documentation including but not limited to pay stubs,

---

[109] Rec. Doc. 104.

[110] *See* Rec. Doc. 61.

contractual agreements, W-2 Wage and Earning Statements, and other documentation requested by the United States Probation Officer. If unemployed, James shall participate in employment readiness programs, as approved by the Probation Officer.

3.  Considering the nature of the instant offense, James shall submit his person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time in a reasonable manner, based upon reasonable suspicion that contraband or evidence of a violation of a condition of supervision may exist; failure to submit to a search may be grounds for revocation; James shall warn any other resident(s) that the premises may be subject to searches pursuant to this condition.

4.  Considering James's history of substance abuse as documented in the Presentence Investigation Report, James shall undergo random urinalyses, as directed by the United States Probation Officer. If James tests positive for the use of illegal narcotics, he may participate in an approved outpatient treatment program for substance abuse and abide by all supplemental conditions of treatment, unless directed otherwise by the Court.[111] James shall contribute to the cost of this program to the extent that James is deemed capable by the United States Probation Officer.

5.  To assist with prosocial decision making, James shall participate in an approved cognitive behavioral therapeutic treatment program and abide by all supplemental conditions of treatment. James shall contribute to the cost of this program to the extent he is deemed capable by the Probation Officer.

Additionally, in light of the COVID-19 pandemic and the reduction of sentence granted to James by this Order, the following additional special conditions shall also be imposed:

1.  Upon release, James shall report immediately to the home of his mother in Mount Hermon, Louisiana.

2.  In light of the COVID-19 pandemic, once released James shall self-quarantine for a period of 14 days.

3.  To address public safety, James shall be placed on home detention and monitored by GPS for a period of no more than six (6) months, to commence immediately upon release from the Bureau of Prisons. James is restricted to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-

---

[111] The terms of this condition are also modified to specify outpatient treatment as required by the Fifth Circuit's recent holding in *Martinez*, WL 6281738, at *3.

ordered obligations; or other activities as pre-approved by the United States Probation Officer. James shall wear an electronic device and shall observe the rules specified by the United States Probation Office. James shall contribute to the cost of this program to the extent that he is deemed capable by the United States Probation Officer.

4. To assist James with his re-entry into the community, James shall provide monthly updates to the Court.

If James violates any condition of supervised release, his term of supervised release could be revoked and he could be sentenced to serve in prison all or part of the term of supervised release without credit for any time previously served on supervised release.[112]

**NEW ORLEANS, LOUISIANA,** this __22nd__ day of December, 2020.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[112] *See* 18 U.S.C. § 3583(e)(3).